McGRAW v. GALVESTON, H. & S. A. RY. CO. (No. 5581.) *

(Court of Civil Appeals of Texas. San Antonio. Jan. 10, 1916. Rehearing Denied Feb. 2, 1916.)

1. APPEAL AND ERROR ⬩⟆1058—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The exclusion of an expert witness' testimony in a personal injury case, was harmless, where not only was the same witness permitted later to swear to the same facts, but another expert medical witness testified to practically the same facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. ⬩⟆1058.]

2. APPEAL AND ERROR ⬩⟆730—ASSIGNMENT OF ERROR—SUFFICIENCY—INSTRUCTIONS.

An assignment of error, complaining that an instruction was "uncertain, confusing, and misleading, and was calculated to mislead the jury and was prejudicial to plaintiff," was too general and uncertain to be considered by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. ⬩⟆730.]

3. STEAM ⬩⟆6—EXPLOSION OF LOCOMOTIVE—EVIDENCE.

In an action for injuries to plaintiff from being thrown to the floor of her house when a locomotive in defendant's roundhouse exploded and hurled a great mass of débris against the house, evidence that the explosion was caused by excessive steam pressure did not demand a verdict for plaintiff, in the absence of proof that such excessive pressure was chargeable to defendant's negligence.

[Ed. Note.—For other cases, see Steam, Cent. Dig. §§ 4–11; Dec. Dig. ⬩⟆6.]

4. STEAM ⬩⟆6—EXPLOSION OF LOCOMOTIVE—CAUSE—EXCESSIVE STEAM PRESSURE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for injuries to plaintiff from being thrown to the floor of her home in consequence of the explosion of a locomotive in defendant's roundhouse, *held* not to require a finding that the explosion was due to excessive steam pressure.

[Ed. Note.—For other cases, see Steam, Cent. Dig. §§ 4–11; Dec. Dig. ⬩⟆6.]

5. STEAM ⬩⟆6—EXPLOSION OF LOCOMOTIVE—PROOF.

Where plaintiff alleged that the explosion was caused by excessive steam pressure created by defendant's negligence, the burden was on her to prove such allegation by facts rather than by mere speculation.

[Ed. Note.—For other cases, see Steam, Cent. Dig. §§ 4–11; Dec. Dig. ⬩⟆6.]

6. STEAM ⬩⟆6—EXPLOSION OF LOCOMOTIVE—PLEADING AND PROOF.

Where the petition alleged that the explosion was caused by excessive steam pressure, and it was not shown but that nothing but steam pressure could have caused the explosion, plaintiff could not recover, except on proof that the explosion was caused as alleged.

[Ed. Note.—For other cases, see Steam, Cent. Dig. §§ 4–11; Dec. Dig. ⬩⟆6.]

7. STEAM ⬩⟆6—EXPLOSION OF LOCOMOTIVE—CAUSE—PRESUMPTION.

Mere proof of the occurrence of such explosion could not authorize the presumption that the explosion occurred on account of excessive steam pressure.

[Ed. Note.—For other cases, see Steam, Cent. Dig. §§ 4–11; Dec. Dig. ⬩⟆6.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by E. H. McGraw against the Galveston, Harrisburg & San Antonio Railway Company. From judgment for defendant, plaintiff appeals. Affirmed.

Fellbaum & Carter, of San Antonio, for appellant. Baker, Botts, Parker & Garwood, of Houston, Templeton, Brooks, Napier & Ogden, and Ed W. Smith, all of San Antonio, for appellee.

FLY, C. J. Appellant sued appellee to recover damages alleged to have arisen from the negligence of appellee in connection with the explosion of a locomotive in its roundhouse in the city of San Antonio. It was alleged that on or about March 18, 1912, while appellant was in her home, about 250 feet from appellee's roundhouse, a locomotive exploded, and great masses of débris were hurled against the house, and plaintiff was thereby thrown to the floor and seriously and permanently injured. Numerous grounds of negligence were alleged, but the only one supported by any evidence and submitted to the jury was excessive steam pressure in the locomotive. The verdict was for appellee. The evidence was conflicting as to the cause of the explosion, and there was testimony upon which the jury justifiably could find that the explosion did not arise from the negligence of appellee.

[1] The first assignment of error assails the action of the court in excluding the testimony of Dr. Allen in answer to a hypothetical question as to what caused a certain physical condition in which the doctor found appellant when he examined her, shortly after the explosion. The answer excluded was: "In my opinion her fall against the table or some object on the floor." However important the testimony may have been, appellant has no just grounds for complaint, if substantially the same testimony was admitted when given by the same or another witness. This we conclude was done. Dr. Allen testified:

"Severe shock and fright, together with a general shaking up from the force of the fall, could cause the condition this lady is suffering from. * * * In my opinion as an expert, a blow or fall against any hard object can cause a contusion. In my opinion, her nervous condition has been caused by the shock and injury and pain from the injury. * * * I am basing my opinion wholly on the assumption that she had this accident, and that she had never had trouble before then."

This testimony covered fully everything in the answer excluded by the court. The physician attributed the injured condition to the fall, which appellant swore had been

⬩⟆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

182 S.W.—27　　*Application for writ of error pending in Supreme Court.

caused by the fragments from the exploded locomotive striking her house, and that was all that could have been obtained from the excluded testimony. Repeated asseveration and reiteration could add no more potency to the evidence. It has been settled, in numerous decisions, beyond cavil or dispute, that there is no vital error in excluding evidence which has been given by the same witness during his examination. Not only is this rule well established, but the courts go further and hold that an appellant has no ground for complaint if the rejected testimony has been given by some other witness. This is common sense, for it would be unreasonable to reverse a judgment because a litigant had not been permitted to prove a fact over and over by the same witness, or when the rejected testimony has been given by another witness. The two rules have been reiterated so often by Texas courts that it is useless to cite authorities. They are settled beyond dispute. Not only did Dr. Allen swear to the same facts, whose rejection is complained of by appellant, but another expert medical witness, when substantially the same hypothetical question was asked him, unhesitatingly and emphatically replied: "I attribute them to her recent injury." He also attributed appellant's nervous condition to her fall as testified to by her. The hypothetical question was asked this witness at least three times, and he answered every time that her injured condition was the result of her fall after the explosion. What more could reasonably be demanded? The assignment of error is overruled.

[2] The following special charge was requested by appellee and given by the court:

"You are instructed that before you can find that the boiler in question was caused to explode by reason of defendant's negligence, you must find affirmatively from a preponderance of the evidence what was the cause of such explosion, that same was caused to explode on account of some defect in the boiler or its appliances, or that same was caused to explode on account of some act or omission on the part of some agent or employé of defendant engaged in handling or operating the engine; and you are further instructed in this connection that before you can find negligence with respect to any defect in the boiler, you must find what was the nature or character of such defect (if any), and that same was of such nature or character as that the defendant could, and would in the exercise of ordinary care on its part, have discovered and remedied such defect (if any) before the alleged explosion occurred. And, in this connection, you are further instructed that before you can find negligence on the part of the defendant with respect to any act or omission of any agent or employé of defendant engaged in handling or operating the engine, you must find that there was some act or omission on the part of some agent or employé of defendant with respect to the matter of handling or operating the engine, and that such act or omission was the cause of the alleged explosion, and that a man of ordinary prudence in the circumstances would not have been guilty of such act or omission. Unless you find there was negligence in one or the other respect mentioned, under the above instructions, you must return a verdict for the defendant."

That charge is attacked by appellant on the ground that it "is uncertain, confusing, and misleading and was calculated to mislead the jury and was prejudicial to plaintiff," and "because said charge was upon the weight of the evidence." In the only proposition under the assignment of error the second objection is abandoned, and only the first objection is urged. The ground of objection is very general, and the clause of the motion for a new trial upon which it is based did not notify the trial judge wherein the charge was "uncertain, confusing and misleading and was calculated to mislead the jury and was prejudicial to plaintiff." It is only after the case reaches this court that a proposition is appended to the assignment of error in which it is stated that the charge of the court only submitted one issue of negligence, and that the special charge led the "jury to believe that it was necessary for them to find other grounds of negligence in addition to excessive steam pressure." The object in requiring objections to be made to a charge before it is read to the jury is to give an opportunity to the trial judge to make any corrections in the charge suggested by the objections, and the end to be attained in making a motion for a new trial is to extend to the judge yet another opportunity to remedy any errors in the proceedings or in the charge. The object of the law in requiring objections to the charge to be presented to the court before it is read to the jury would be a "snare and a delusion" if vague and indefinite and general objections pointing out no error would suffice. The practice as to charges would, in no substantial way, be different from what it was before the statute was amended, and charges could be attacked upon any grounds occurring to shrewd counsel after the trial, and after all chance for the trial judge to correct an error is irretrievably lost.

Such assignments of error as the one under consideration have been condemned by this court and consideration of them denied in a number of instances. In the case of Railway v. Boothe, 126 S. W. 700, the assignment was that the charge was "misleading and confusing and in many portions of the charge it is impossible to decipher the meaning," and Judge James, for this court, held: "This complaint points to nothing definite, and is not to be considered." Again, in the case of Railway v. Averill, 136 S. W. 98, a similar assignment of error was not entertained by this court on account of its uncertainty. To the same effect are Railway v. Templeton, 175 S. W. 504, and Railway v. Watts, 182 S. W. 412, not yet published, both of this court.

[3, 4] The third assignment of error is overruled. It is asserted therein that the "uncontroverted testimony" showed that the explosion "was caused by excessive steam pressure," and if that assertion was supported by the record, still it would not be sufficient to

justify a verdict unless it appeared that such excessive steam pressure was chargeable to the negligence of appellee. This was not done, but, on the other hand, the evidence showed that the engine had just come from the shops, where it had been thoroughly repaired, tested, and inspected, and that so far as human skill and intelligence could determine, it was in a perfect condition, and if there was excessive steam pressure, the evidence failed to disclose how it arose. There was no evidence tending to show that excessive steam pressure caused the explosion, unless it is to be inferred from the explosion itself, except the opinion of F. A. Carver, who gave it as his opinion that excessive steam pressure caused the explosion. On cross-examination he testified that he had never seen the engine and did not know how much steam was on at the time. In opposition to that opinion, a witness testified to the excellent condition in which the engine was at the time; that excessive steam would cause leaks at every joint, rivet, and bolt; that he had been on the engine, examining it, about 10 minutes before the explosion; and that at that time there were no leaks; and he thought the steam gauge showed between 180 and 190 pounds. He testified that it would have taken 20 or 25 minutes to have accumulated 25 or 30 pounds additional steam to the 180 or 190 pounds. The danger point was placed by Carver at from 600 to 800 pounds. The witness J. E. McLean was an expert master mechanic and if his testimony was to be credited, the jury would naturally reject the opinion of a man which was mere speculation and utterly baseless. The master mechanic also stated:

"I doubt whether an accident such as that was could have been produced by excessive steam pressure."

Another witness testified to having been on the engine a short time before the explosion, and the steam gauge showed 190 pounds. Another witness testified that he was on the engine just a few minutes before the explosion, and there were no signs whatever of excessive steam. There was other testimony tending to support the evidence mentioned, and instead of the "uncontroverted testimony" showing that the explosion was caused by excessive steam pressure, a preponderance of the evidence tended to show that it did not arise from that cause.

[5] There can be no doubt that the explosion, as stated by appellant, "was an unusual occurrence and was terrific," but the testimony utterly fails to disclose the titanic cause of the destructive explosion. As said by the master mechanic:

"Any man can speculate on it, but to be in a position where you can say what caused it is entirely different."

Appellant alleged that it was caused by excessive steam pressure, which was created by the negligence of appellee, and it devolved upon her to prove it by facts, and not by vague imagination and wild speculation.

[6, 7] It may be that if it had been alleged that the locomotive was under the management and control of appellee and an unusual explosion occurred, in the absence of an explanation, the reasonable conclusion would be that the explosion arose from a want of care, but in this instance appellant's case must rest on proof that the explosion was caused by excessive steam pressure, as she alleged in her petition. If it had been shown that nothing but steam pressure could cause such an explosion, the case would have been different, but that was not done. Under a general allegation of negligence, the facts attending the explosion might be such as to lead reasonably to the belief that without negligence the accident would not have occurred. But the negligence was alleged to have consisted in a certain act or condition brought about by the negligence of appellee, and it must be proved. That the explosion occurred on account of excessive steam pressure cannot be presumed from the fact of the explosion alone. McCray v. Railway, 89 Tex. 168, 34 S. W. 95; Broadway v. Gas Co., 24 Tex. Civ. App. 603, 60 S. W. 270; Talley v. Beever, 33 Tex. Civ. App. 675, 78 S. W. 23.

The evidence left the cause of the explosion shrouded in mystery, the experts stating that they did not know what caused the accident. In the very nature of things no man could truthfully say that he knew the cause of the explosion. It might have been caused by excessive steam pressure, but it might also have been brought about by other causes.

The judgment is affirmed.