**HANSON v. PONDER et al. (No. 7714.)***

Court of Civil Appeals of Texas. San Antonio. March 2, 1927.

Rehearing Denied March 30, 1927.

1. Railroads ☞282(5)—Evidence held insufficient to show negligence of railroads in equipping, loading, and inspecting log cars injuring workman unloading cars for employer.

Workman could not recover, in suit against defendant employer and codefendant railroads, for injuries sustained while unloading logs, where evidence affirmatively showed due care in equipping, loading, and inspecting cars, and accident occurred after plaintiff cut wires holding logs in place.

2. Master and servant ☞265(5)—Rule of res ipsa loquitur is not ordinarily to be invoked, as between master and servant.

Rule of res ipsa loquitur cannot ordinarily be invoked by servant against master; the mere fact of accident and injury to employee without proof of employer's negligence being insufficient to justify recovery.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Charles Hanson against A. R. Ponder, receiver, and others. From judgment for defendants, plaintiff appeals. Affirmed.

James M. Taylor and E. B. Ward, both of Corpus Christi, for appellant.

Baker, Botts, Parker & Garwood, of Houston, Mason Williams, of San Antonio, and Kleberg & North and Boone & Savage, all of Corpus Christi, for appellees.

FLY, C. J. This is a suit by appellant against the Galveston, Harrisburg & San Antonio Railway Company, the San Antonio, Uvalde & Gulf Railway Company and its receiver, A. R. Ponder, the Sumner-Sollitt Company, and Morgan's Louisiana & Texas Railroad & Steamship Company to receive damages arising from personal injuries inflicted upon him through negligence in equipping a certain car for transporting piling to Corpus Christi, in overloading the car, in improperly loading the car, and in the inspection of the car, and some 10 other grounds of negligence. The facts showed that the car was carried into Corpus Christi by the road of which Ponder was receiver and placed on a siding, and, while the Sumner-Sollitt Company had men unloading heavy logs or piling from the car, one or more of the standards or stakes which were in sockets on the side of the car broke and the logs rolled down, and appellant, who was assisting in unloading the car, was, as claimed by him, severely injured.

The car of piling was shipped from the state of Louisiana to Corpus Christi, Tex. The car was loaded in Louisiana and was being unloaded at Corpus Christi when the accident occurred. The car was on a siding owned and controlled by the San Antonio, Uvalde & Gulf Railway Company. The evidence showed that the car was loaded by the American Creosoting Works near New Orleans. When the car reached Corpus Christi, it was switched by the railway company to the place where it was unloaded. The logs were held on the flat car by pine saplings standing in four sockets on the side of the car, four stakes to the side. The stakes were fastened together by rods and wires. The rods ran across the car underneath the piling, between the top of the car and the bottom of the piling. Three wires were twisted about each of the stakes and extended from stake to stake through the piling. The wires were distributed across the car, from stake to stake, so that one was on top the piling, another two feet below the top, and another four feet further down. The stakes were seven or eight feet in height. Appellant with other employees of the Sumner-Sollitt Company went on the car to unload it and first cut the wires on top. Appellant and companions then began unloading the piling,

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 25, 1927.

and when they had unloaded six on the north side of the car the stakes on the south side broke, and men and logs rolled off down the embankment near the track. Five of the piling rolled on appellant and injured him.

E. W. Kelley, a general contractor, testified that he had loaded many cars with piling, and that when properly loaded the piling will not fall off, and that an inspection would readily disclose whether a car is loaded "right or not." The shipment was what was called a twin car shipment, because the logs were so long that two cars were used. The testimony of some of the witnesses was that practically all the weight was on one car and that standards were used only on that car. They were dangerous shipments. It appeared from the evidence of A. P. Anderson, general car foreman for the San Antonio, Uvalde & Gulf Railway Company, that he examined the twin load of piling at North Pleasanton and found that two of the stakes had slipped up about one or one and a half inches in their sockets, and he endeavored to keep them from slipping up higher by boring holes in the stakes or standards and putting iron rods through the two center stakes and across the car underneath the piling. Witnesses had testified that everything was all right when the car left San Antonio, only about 30 miles distant from North Pleasanton. The uncontradicted evidence showed that the car was properly loaded in Louisiana, and it was repeatedly inspected at different points and by different carriers, until it reached Corpus Christi and was placed on the siding. No defect in the loading or in the position of the logs was discovered when the unloading began, nor afterwards.

[1] Taking up the different grounds of negligence upon which appellant relied, we find as heretofore stated that no negligence in loading was shown, no testimony that the car was not properly equipped for transporting piling, nor that the equipment was not properly maintained, nor that the car was overloaded, nor that the injury occurred from the bare fact that appellant went upon it, nor that it was neglected to properly secure the piling, nor that the stakes were not of sufficient strength, nor that the inspections were not properly performed, nor in not warning appellant about going on the car, nor in permitting the car to get out of fix, nor in any other respect. On the other hand, all these matters of negligence were shown not to exist. When appellant went upon the piling, he nor any one else discovered any indications of the piling being insecurely on the car, but it appeared to be perfectly secure and, indeed, was securely fastened on the car until appellant himself cut the wire running across the car and loosened the load up so that it rolled over to the south of the car with such force as to break the standards. They had held the logs in place through the long journey from New Orleans to Corpus Christi, and only gave away after the acts of appellant had put a strain upon them which could not have been anticipated.

When the car was inspected at North Pleasanton and it was ascertained two of the standards were slipping, they were tied together so that they did not further slip, and when the standards broke it was not at the place where the rods had been put through. No defects were found in the material used for the standards.

[2] No act of negligence was proved, and negligence could only be predicated on the fact that after the wires were cut and the logs unsettled they rolled to one side with such force as to break the standards. Neither the shipper of the logs, nor either of the connecting carriers were shown to have been negligent as to the loading, inspection, or handling of the car, nor was any negligence shown upon the part of the Sumner-Sollitt Company, the employer of appellant, and in order to hold the employer liable there is only the rule of res ipsa loquitur, which could give any semblance of the right of recovery. But that rule cannot ordinarily be invoked as between master and servant. The rule of res ipsa loquitur was fully discussed by this court in its bearing on cases between master and servant, or employer and employee, in Broadway v. Gas Co., 24 Tex. Civ. App. 603, 60 S. W. 270, and it was held:

"It is a well-settled rule, where the servant or employee sues his master or employer for damages arising from personal injuries inflicted through the negligence of defendant, that in order to recover he must prove such negligence, and proof of the accident and injury standing alone will not justify a recovery."

In that case the authorities were reviewed, and a judgment based on a peremptory instruction to find for the defendant was sustained. A writ of error was denied by the Supreme Court, and that is the settled doctrine in Texas, as well as other states. Some courts hold, as in Railway v. Cassady (Tex. Civ. App.) 175 S. W. 796, that the doctrine applies when the accident occurs through the negligence of the master, but that is simply begging the question. If negligence is shown, of course the happening of the event can be considered with other circumstances tending to show negligence.

If the rule were otherwise, it could not be applied in this case because the intervening acts of appellant in cutting the wires had altered the condition of the piling on the car.

When appellant mounted the car, the defective loading of the logs, had it existed, was fully as apparent to him as to his employer, and nowhere in the pleading or briefs is it attempted to show in what particular the facts showed negligence. There are general charges of negligence, but the brief fails to point out any specific evidence

tending to show negligence by any one. The whole case rests on the assumption that, having proved an accident, somebody must have been negligent in causing it. The evidence totally fails to show negligence.

The judgment is affirmed.